**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0906-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEVIN A. VAUTERS,

    Defendant-Appellant.

_____

Submitted January 5, 2021 – Decided February 2, 2021

Before Judges Yannotti and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 12-05-0795 and 13-01-0029.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from an order dated January 5, 2018, which denied his petition for post-conviction relief (PCR). We affirm.

I.

Defendant was charged under Middlesex County Indictment No. 12-05-0795 with first-degree murder of Eugene Lockhart, N.J.S.A. 2C:11-3(a)(1) or (2) (count one); first-degree felony murder of Lockhart, N.J.S.A. 2C:11-3(a)(3) (count two); first-degree armed robbery of Lockhart, N.J.S.A. 2C:15-1 (count three); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count four); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five); third-degree hindering his own detention, apprehension, investigation, prosecution or conviction, N.J.S.A. 2C:29-3(b)(1) (count six); third-degree hindering an investigation, N.J.S.A. 2C:29-3(b)(4) (count seven); third-degree witness tampering of B.A. and H.R., N.J.S.A. 2C:28-5(a)(1) (counts eight and nine); and attempted false incrimination of M.V., N.J.S.A. 2C:28-4(a) (count ten).[1] Defendant also was charged under Middlesex County Indictment No. 13-01-0029 with first-degree witness tampering of D.W., N.J.S.A. 2C:28-5(a) (count one). Defendant was tried before a jury in a single proceeding on all charges.

_____

[1] We use initials to identify certain individuals to protect their privacy.

A-0906-18T4

## II.

At the trial, the State presented evidence which showed that at 6:45 a.m. on January 10, 2012, the police found Lockhart's body in Pittman Park in New Brunswick. He had been shot once in the head at close range. The police found several packets of heroin stamped "Fire Blood" on the ground near the body. The heroin packets formed a trail going across the street from Pittman Park to Feaster Park.

The zipper on Lockhart's pants was open. It appeared he had been searched. Six packets of cocaine were found in Lockhart's mouth, and expert testimony indicated that drug sellers often stash drugs in their mouths. The police found a black wallet in Feaster Park, which contained Lockhart's identification, driver's license, and several bank cards.

The medical examiner determined the bullet had traveled through Lockhart's head and exited the back of his head. The wound was consistent with a wound caused by a medium caliber bullet, like a .9mm or .357 bullet. The medical examiner found the gunshot wound was the cause of death.

The police spoke with M.N., who was seen standing near Pittman Park as the officers were searching the area. M.N. said he knew Lockhart and Lockhart had been selling heroin and crack cocaine the previous night. M.N. saw

A-0906-18T4

defendant in the area around 2:50 a.m. M.N. said defendant told him he did not like Lockhart, and he was going to rob him. At around 3:00 a.m., M.N. noticed that defendant was in possession of a nickel-plated gun. He heard defendant tell Lockhart he had three bags of cocaine to sell him, and he saw defendant and Lockhart walk up the street together.

M.N. walked around the corner and was following a "kid" who was known as "Blue." M.N. saw defendant and Lockhart talking. He saw Lockhart with his pants down, and defendant was "running" his pockets. According to M.N., defendant had a shiny object in his hand. M.N. left the area because he did not want to be involved. He asked Blue for the time, and he said it was around 4:21 a.m. M.N. then heard a gunshot and left the area.

An investigator from the Middlesex County Prosecutor's Office contacted Lockhart's mother to inform her of Lockhart's death. She provided the investigator with Lockhart's cellphone number. The investigator determined that the phone was still operable. He obtained a warrant, and the police tracked the location of the phone to a location on Carmen Street in New Brunswick.

Later, the police set up surveillance at that location and observed defendant leave a house on Carmen Street. Defendant was found to be in possession of two cellphones, one of which was Lockhart's phone. Defendant

4

also was found to be in possession of six bags of heroin stamped "Fire Blood" and two bags of heroin stamped "Nike."

The police informed defendant of his Miranda rights.[2] Defendant waived his rights and gave a statement to the police. He claimed a member of the Grapes subset of the Crips gang had killed Lockhart. Defendant stated that he did not know Lockhart well, and asserted that he was home by 1:00 a.m. on the night of the murder.

Defendant said he had obtained one of the cellphones two or three days earlier from a drug user in exchange for cocaine. The police told defendant the phone was Lockhart's phone and Lockhart had used the phone to call his mother the night before he was shot. Defendant could not explain the discrepancy. He said he found the gun on Remsen Avenue at around 1:00 a.m. that morning.

The police executed a search warrant at defendant's home on Carmen Street in New Brunswick. They found one .9mm cartridge on the floor of defendant's bedroom. In the backyard, the police found a .9mm handgun, which was wrapped in a blue shirt and stashed between a fence and an air conditioner. The gun had a magazine with five unfired rounds, and one chamber contained a spent cartridge casing. The gun and casing were tested and found to be operable.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0906-18T4

The police obtained surveillance footage from a camera located on the corner of Remsen Avenue and Seamen Street. The surveillance footage showed defendant walking with Lockhart, M.N., and another person at 2:50 a.m. to 2:57 a.m. on the day of the murder. Lockhart's mother testified that she spoke to her son every day, and phone records showed that she spoke to Lockhart at 10:22 p.m. on January 9, 2012.

B.A. testified that he was defendant's close friend, even though defendant was a member of the Bloods and he was a member of the Crips. B.A. said that on the evening of January 9, 2012, he was with defendant from 8:00 p.m. to 10:00 p.m. Defendant drove B.A. around New Brunswick so that B.A. could deliver drugs he had obtained from a drug user.

Defendant and B.A. stopped for gas between 8:00 p.m. and 9:00 p.m. They saw D.W., who came to the car and told defendant he needed a ride to Long Branch. D.W. claimed he had just been robbed at gunpoint by a person with the street name of "Rells." Lockhart was known by that street name.

Defendant agreed to drive D.W. to Perth Amboy, where he could get a train from there to Long Branch. During the ride, defendant told B.A. he had loaned Lockhart his gun to commit a robbery, but Lockhart had not split the proceeds with him. Defendant said he planned to rob Lockhart, and he wanted

A-0906-18T4

to do so in a dark spot, like near the park on Seamen Street. B.A. tried to talk defendant out of robbing Lockhart, but defendant told him he was going to "bust [Lockhart's ass]" and leave him "in the pit."

Defendant and B.A. dropped off D.W. in Perth Amboy and returned to New Brunswick. Defendant left B.A. at 10:00 p.m., and B.A. did not see defendant again that night. The following day, B.A. heard that Lockhart had been killed. On January 10, 2012, at around 9:00 p.m., defendant called B.A. on Lockhart's phone. He wanted to meet B.A. but B.A. refused to meet him at that time. However, B.A. saw defendant later that night and told him he knew what he had done. According to B.A., defendant just smirked.

Sometime later, D.W. was incarcerated on an unrelated matter. While D.W. was in jail, he received threats against himself and his family. He was told he would be killed if he "snitched" on defendant. D.W. was placed in protective custody, but the threats continued. D.W. informed an investigator about a threatening letter he received. The investigator testified about the letters D.W. received and said they included statements gangs use as threats.

Defendant called Y.A. from jail. He told her he would be sending her a letter, which would contain two letters. In another call, defendant told Y.A. he wanted her to reach out to B.A., who was her former boyfriend. She later

received a letter from the jail with no return address. It contained letters for Y.A. to deliver to H.R. and B.A. The letter to H.R. asked him to say that on the night Lockhart was killed, he saw a tall black man robbing him. The letter to B.A. asked him to blame defendant's uncle for the murder.

The jury found defendant guilty of all charges. The jurors also answered special interrogatories pertaining to the aggravating factors for sentencing on the murder charge. The jury found defendant murdered Lockhart by his own conduct while engaged in the commission of a robbery.

The judge sentenced defendant to a life sentence without parole for the murder. The judge merged certain counts, and imposed concurrent sentences on counts two, three, five, six, seven, and ten. The judge imposed a sentence of six years on counts eight and nine, to be served consecutive to the sentence on count one. In addition, the judge sentenced defendant to a consecutive term of thirteen years for the witness tampering charged in Indictment No. 13-01-0029. The judge entered a judgment of conviction (JOC) dated October 29, 2013.

### III.

Defendant appealed from the JOC and his attorney raised the following arguments:

POINT I

THE COURT'S IMPROPER EXCLUSION OF TESTIMONY FROM LOCKHART'S MOTHER ABOUT THREATS HER SON HAD RECEIVED COMPROMISED DEFENDANT'S RIGHT TO OFFER SUPPORT FOR HIS CLAIM OF THIRD-PARTY GUILT, VIOLATING HIS CONSTITUTIONAL RIGHTS.

POINT II
THE COURT'S FAILURE TO PROVIDE THE JURY WITH A LIMITING INSTRUCTION REGARDING THE POST-HOMICIDE CHARGES DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL (Not Raised Below).

POINT III
THE IMPOSITION OF THE SENTENCE OF LIFE WITHOUT PAROLE WAS, UNDER THE CIRCUMSTANCES OF THIS CASE, VIOLATIVE OF THE PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENTS U.S. CONST., AMENDS. VIII, XIV; N.J. CONST. (1947), ART. 1, PAR. 12 (Not Raised Below).

Defendant filed a supplemental pro se brief in which he raised the following arguments:

POINT [I]
Did the prosecutor[']s references that defendant was in custody on an out-standing arrest warrant violate[] his constitutional rights under state and federal law[?]

POINT [II]

9

Did the prosecutor deny defendant a fair trial and due process by withholding material evidence in violation of both[], the Brady[3] rule, and the rules of discovery[?]

POINT [III]
Did the prosecutor deny the defendant a fair trial and due process of law by using false testimony to gain an unfair advantage over the defendant[?]

POINT [IV]
Because the prosecutor committed misconduct by making misleading and confusing [innuendoes], and factual assertions she knew were not supported by the established facts of the DNA or scientific, forensic evidence, . . . defendant [was denied] a fair trial[.]

POINT [V]
Did the prosecutor deny the defendant due process and a fair trial by interfering with his rights to effectively cross-examine, and elicit favorable information leading to a potential [third] party[']s guilt[?]

POINT [VI]
. . . [T]he trial court [erred] by permitting, without any instruction, defendant[']s involvement with the [B]loods street gang[, which] violated his rights under the Sixth, and Fourteenth Amendments to the [United States Constitution] and [N.J.R.E.] 404(b)[.]

POINT [VII]
. . . [T]he trial court failed to give an immediate instruction to the jury on how it is to use the other crimes evidence, i.e., the CDS [Controlled Dangerous Substance], the weapon, the evidence, and the arrest warrant evidence[, which] violated defendant[']s state and federal constitutional rights.

---

3  Brady v. United States, 397 U.S. 742 (1970).

A-0906-18T4

We rejected these arguments and affirmed defendant's convictions and sentences. State v. Vauters, No. A-3503-13 (App. Div. Jan. 15, 2016) (slip op. at 23). Defendant thereafter sought review of our judgment by filing a petition for certification with the Supreme Court. The Court denied the petition. State v. Vauters, 224 N.J. 529 (2016).

IV.

In May 2016, defendant filed a PCR petition in the Law Division, alleging ineffective assistance of trial counsel. The court assigned counsel to represent defendant, and counsel filed an amended petition, certification from defendant, and supporting brief. On December 22, 2017, the PCR judge heard oral argument on the petition, and on January 5, 2018, the judge placed his decision on the record.

The judge noted that defendant had raised several claims of ineffective assistance of counsel. He alleged he was unfairly prejudiced by the introduction of evidence indicating he was a member of a gang. He claimed his counsel should have sought severance of the charges related to the murder with the post-homicide charges. He also claimed he was prejudiced because D.W., who was one of the State's witnesses, had testified in prison garb.

11                                                                              A-0906-18T4

Defendant further alleged his counsel did not adequately present a defense against the State's evidence regarding the time frame in which he could have committed the murder. Lastly, he claimed his attorney erred by failing to object to the admission of a letter that he allegedly wrote to M.N. He claimed the State failed to show a direct link between himself and the letter.

The PCR judge found that defendant had not shown that any actions of his trial or appellate counsel were unreasonable. The judge noted that in defendant's statement to the police, he had admitted he was a gang member, and several witnesses testified at trial that he was a member of a gang. The State also presented testimony from an expert explaining language used by gang members.

The PCR judge found that while trial counsel did not object to the admission of the testimony regarding defendant's gang membership, it was probably a strategic decision. The judge pointed out that trial counsel had asserted that Lockhart had been a gang member, and he could have been killed by another gang member.

The PCR judge also noted that the trial judge had denied defendant's motion to sever the homicide-related counts with those charging post-homicide offenses, which involved witness tampering. The trial judge had determined that evidence related to the murder and the witness tampering were admissible

in both trials, and there was no basis for severing the charges. The PCR judge found defendant's trial counsel did not err by failing to re-file a motion for severance of the charges.

In addition, the judge rejected defendant's claim that his attorney should have objected to D.W. testifying in prison clothing. The judge noted that defendant had argued he was prejudiced because of his association with D.W. The judge found, however, that D.W.'s credibility would have been adversely affected by his testifying in prison clothing, but this would have prejudiced the State's case because D.W. was one of the State's witnesses.

The judge further found that there was no merit to defendant's claim that his trial attorney erred by failing to object to the admission of a letter that defendant allegedly had written to M.N. The judge noted that a witness had been able to testify, based on his prior knowledge, that defendant had written the letter.

The judge concluded that defendant failed to show he was prejudiced by the alleged deficient performance by his attorney. The judge observed that the State had presented substantial evidence placing defendant with the victim near the time of the murder, as well as surveillance footage and cellphone data that connected defendant to the victim. The judge found that defendant failed to

demonstrate that exclusion of the gang-related testimony or the letter would have resulted in a different outcome at trial.

The judge also noted that defendant had raised additional arguments in his pro se brief, but these arguments had been previously raised and rejected on direct appeal. The judge concluded that defendant was not entitled to an evidentiary hearing on his petition and entered the January 5, 2018 order denying PCR. This appeal followed.

V.

On appeal, defendant argues:

> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY AFFIRMATIVELY INTRODUCING IRRELEVANT AND PREJUDICIAL GANG EVIDENCE INTO HIS TRIAL.

We have considered defendant's argument and conclude it lacks sufficient merit to warrant extended comment. R. 2:11-3(e)(2). We affirm the order denying PCR substantially for the reasons stated by the PCR judge in the decision placed on the record. We add the following comments.

A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J.

14

42, 58 (1987). Under that test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. The defendant must establish that the attorney's performance "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

The defendant also must show "that the deficient performance prejudiced the defense." Id. at 687. To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. Id. at 694.

Furthermore, an evidentiary hearing on a PCR petition is required only when the defendant presents a prima facie case for relief, the court determines that there are issues of material fact that cannot be resolved by reference to the existing record, and the court determines that an evidentiary hearing is required to resolve the issues raised. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the

light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)).

On appeal, defendant claims his trial attorney was deficient in failing to object to the State's admission of evidence regarding his gang membership and the gang membership of certain witnesses. Defendant contends such evidence was irrelevant and unduly prejudicial. He asserts the trial judge had expressed concern about the admission of this evidence, but his attorney argued for its admission so that he could show the jury that Lockhart had been concerned about violence from a gang other than defendant's gang. Defendant contends any reasonable attorney would have known this evidence was inadmissible hearsay, and the PCR judge erred by finding counsel made a valid strategic decision in failing to object to its admission.

We are convinced, however, that the record supports the PCR judge's conclusion that defendant's trial counsel made a reasonable strategic decision to allow the State to introduce evidence regarding defendant's gang membership and the gang membership of other witnesses. As the judge recognized, defense counsel wanted the jury to hear this evidence because it supported the claim that someone other than defendant murdered Lockhart.

The record shows that at trial, defense counsel elicited testimony from M.N. that Lockhart was a member of Grape Street, which is part of the Crips gang. M.N. testified that Lockhart had "snitched" on someone in the gang, which usually means that the "snitch" can get "disciplined." He explained that "disciplined . . . means they'll beat you halfway to death."

On redirect, M.N. testified that defendant was a member of Brim, which is part of the Bloods gang, and that "Blue" was affiliated with G-Shine, which is also a part of the Bloods gang. M.N. said he did not see any other Grape Street Crips on the scene at the time of the shooting.

In addition, trial counsel elicited testimony from B.A. that he and Lockhart were members of the Crips and defendant was a member of Brim. B.A. further testified that the Bloods and the Crips did not get along, and that Lockhart and defendant sold drugs in the area near Pittman Park. Moreover, the DVD of defendant's recorded statement was played for the jury. As noted, in his statement, defendant told the police that a member of the Crips gang had killed Lockhart.

Thus, the evidence that Lockhart was a member of the Grape Street subset of the Crips and that he had previously "snitched" on another member of the Crips was a key element of the defense strategy. Counsel wanted to raise

A-0906-18T4

reasonable doubt as to defendant's guilt by asserting that Lockhart was killed by someone other than defendant.

By not objecting to the evidence of gang affiliation, trial counsel was able to assert that Lockhart was a drug-dealing member of the Crips, who was at risk of being "disciplined" by other members of that gang. Moreover, defense counsel could not reasonably object to the introduction of testimony about defendant's gang membership. As noted, defendant admitted such membership in the statement he provided to the police. We reject defendant's contention that evidence regarding his gang membership was irrelevant.

Therefore, the record supports the PCR court's determination that defendant failed to present a prima facie case for relief. Accordingly, the PCR court correctly found that defendant was not entitled to an evidentiary hearing on his petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0906-18T4